UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOLORES DUNN and DONALD DUNN : | |
| Plaintiffs, : | |
| v. : | LEAD CASE NO. 3:00CV1306 (DJS) |
| ZIMMER, INC., : | |
| Defendant. : | |
| ---------------------------------------------------------------- : | |
| STACIA BOGDAN and FRANK BOGDAN : | :Pertains only to: |
| Plaintiffs, : | :MEMBER CASE NO. 3:02CV637 (DJS) |
| v. : | |
| ZIMMER, INC. : | |
| ---------------------------------------------------------------- : | |

## JUDGMENT

This action having come on for consideration of defendant's motion for summary judgment [dkt.#168] before the Honorable Dominic J. Squatrito, United States District Judge. The pending action, Stacia and Frank Bogdan v Zimmer, Inc. No. 3:02cv637 (DJS), was consolidated with the matter of Dunn v Zimmer, No. 3:00cv1306 (DJS), for purpose of conducting discovery. The pending motion for summary judgment was filed in the lead case. The decision concerns only the claims brought by Stacia and Frank Bogdan and

The court having considered the motion and the full record of the case including applicable principles of law, filed a Memorandum of Decision granting defendant's motion for summary judgment. The claims for product liability, failure to warn, violations of CUTPA and common law fraud are all time barred by the three-year statute of limitations. Accordingly, the derivative claim for loss of consortium is also dismissed, it is hereby

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment is GRANTED. Judgment shall enter in favor of the defendant, Zimmer, on all counts of the complaint.

Dated at Hartford, Connecticut, this 29th day of March 2005.

KEVIN F. ROWE, Clerk

By _____
Terri Glynn
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **DOLORES DUNN, et. al.,** : | 3:00CV1306 (DJS) |
| Plaintiffs, : | [pertains only to 3:02CV637 (DJS)] |
| -v- : | |
| : | |
| **ZIMMER, INC.,** : | |
| Defendant. : | |

## MEMORANDUM OF DECISION

Defendant, Zimmer, Inc. ("Zimmer"), has moved for summary judgment **[doc. #168]** on all claims brought by plaintiffs Stacia Bogdan ("Bogdan") and Frank Bogdan (collectively "Bogdan"). Zimmer argues that the claims were brought beyond the three-year statute of limitations and are therefore time-barred. Plaintiffs allege that Stacia Bogdan's hip prosthesis, the Centralign Precoat, was defective pursuant to Connecticut General Statute §52-572m, et. seq., under theories of design defect, manufacturing defect and failure to warn. Plaintiffs seek damages under the Connecticut Unfair Trade Practices Act and for common law fraud. Frank Bogdan also states a claim for loss of consortium. The motion for summary judgment is **GRANTED**.

### Background

Plaintiff, Stacia Bogdan, began experiencing pain in her right hip at some time prior to 1994. Bogdan had difficulty sleeping and limited hip function, which led her to consult Dr. Bruce H. Moeckel ("Dr. Moeckel"), her physician. Dr. Moeckel recommended a total hip replacement surgery on Bogdan's right hip and the surgery was performed on October 6, 1994. Dr. Moeckel implanted a Centralign Precoat, size #2 hip prosthesis, manufactured and designed by the defendant, Zimmer, Inc. ("Zimmer"). The surgery was initially successful and Bogdan regained

pain-free use of her right hip.

Approximately one year later, on October 18, 1995, Bogdan told Dr. Moeckel that she felt increasing pain in her right thigh. Dr. Moeckel took x-rays of Bogdan's hip and saw signs that the hip prosthesis was loosening. Dr. Moeckel informed Bogdan of the loosening and told her that it was occurring earlier than he would have expected from a cemented femoral stem. Dr. Moeckel monitored the hip with bone scans and x-rays during the period from October 1995 to June 1996–at each examination, the hip showed signs of loosening.

Dr. Moeckel explained to Bogdan that her hip was loose and that she would need a revision surgery to implant a second replacement hip. Bogdan had initially understood that her hip would last for ten years and she asked Dr. Moeckel why her hip failed earlier than that time. The record does not show how Dr. Moeckel responded. The revision surgery took place on July 16, 1996, at which time Dr. Moeckel inserted a Centralign Precoat femoral revision stem with 2.5 mm spacers. Bogdan was then able to resume normal daily activities.

Bogdan later suffered a fall that caused a crack in the cement mantle surrounding her revision prosthesis. The crack eventually led to a third surgery being performed by Dr. John Grady-Benson in 2000. Bogdan filed the pending complaint on April 10, 2002.

### Standard of Review

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the

burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

## Discussion

Plaintiff, Stacia Bogdan, brings the present cause of action alleging violation of: (a) the Connecticut Products Liability Act, Conn.Gen.Stat. §52-572m, et. seq., ("CPLA") (b) the Connecticut Unfair Trade Practices Act, §42-110b, et. seq., ("CUTPA") and (c) common law fraud. Bogdan seeks compensatory and punitive damages. Frank Bogdan, Stacia's husband, brings a claim for loss of consortium. The claims are all based on the first hip replacement surgery, performed in 1994 and revised in 1996. Zimmer contends that all of Stacia's claims are time-barred and further that Frank's claim for loss of consortium is derivative and must be dismissed if Stacia's claims are dismissed.

### I. Statute of Limitations for CPLA

The CPLA provides that no product liability claim shall be brought unless it is within three years "from the date when the injury, death or property damage is first sustained or

discovered or in the exercise of reasonable care should have been discovered." Conn.Gen.Stat. §52-577a. A cause of action for product liability accrues when the plaintiff suffers an actionable harm. Gnazzo v. G.D.Searle & Co., 973 F.2d 136, 138 (2d Cir. 1992). "Actionable harm occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action." Lambert v. Stovell, 205 Conn.1, 6 (Conn. 1987). "The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." Catz v. Rubenstein, 201 Conn. 39, 47 (Conn. 1986). "The essential elements of a tort cause of action (whether in negligence or strict liability) are tortious conduct, actual injury, and a causal connection between the defendant's tortious actions and the resultant injury." Bellsouth Telecommunications, Inc. v. W.R. Grace & Co., 77 F.3d 603, 611 (2d Cir. 1996).

The facts show that Bogdan knew as early as October 1995 that her hip was failing and that she was informed as early as April 15, 1996 that the failure was occurring earlier than her doctor anticipated. Bogdan's revision surgery and the replacement of the allegedly defective hip took place on July 16, 1996. Bogdan does not dispute these facts, instead claiming that she did not have sufficient knowledge to bring her claim until November, 2001, when she was informed by Dr. Moeckel that her initial hip prosthesis was the subject of lawsuits alleging a defective design that could explain the initial failure of the 1994 surgery.

A cause of action in tort requires a breach of duty and a causal connection between the breach and the injury suffered. Catz, 201 Conn. at 4. Bogdan argues that she did not know the identity of the breaching party or that the breach caused her injury until 2001. A claimant is not time barred until she "knows, or should have known" the identity of the party that caused her injury. Tarnowsky v. Socci, 75 Conn.App. 560, 569 (Conn.App.Ct. 2003). It is true that Bogdan did not know that her hip was manufactured by Zimmer, but her failure to discover this easy-to-

-4-

find fact until 2001 is not indicative of diligence or due care. Once she was aware that her hip had failed and that her doctor considered the failure premature, plaintiff could have discovered the identity of the manufacturer with ease–perhaps even by asking her doctor, something that she seems never to have done.

The critical issue raised by the plaintiffs is not the question of identity but the question of causation. Bogdan insists that she could not bring her cause of action until she had knowledge that her hip failed due to a design defect, and this knowledge was not available to her until 2001. Plaintiff relies on Catz to sustain her theory. In Catz, the decedent, Elaine Foster ("Foster"), discovered a lump in her breast in July 1979 and consulted a doctor, who informed her that she did not have cancer. A second lump appeared in January 1980 and was deemed cancerous on May 1, 1980. Foster was not told in May 1980 that the cancerous tumor was related to the first tumor that was mis-diagnosed as benign. The record, as reported by the court, suggested that she was actually led to believe that the cancer was unrelated to the original lump. It was not until April, 1982 that Foster was told that the original lump was cancerous and had metastasized, an event that might have been prevented by proper diagnosis. She filed her claim for medical malpractice on June 11, 1982. The statute of limitations applicable to medical malpractice was two years, and the defendant raised the statute of limitations as a defense. Catz, 201 Conn. at 40-42.

The Connecticut Supreme Court held that there was a genuine issue of material fact that precluded summary judgment. The Catz court found that it was uncertain, based on the record, when Foster could have discovered the relationship between the misdiagnosed tumor and the second tumor. The court affirmed that the cause of action does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the causal

relationship between the mis-diagnosis and the subsequent injury. Catz, 201 Conn. at 44.

The facts of this case do not match neatly with those of Catz, despite plaintiff's attempt to draw a link between the two cases. Here, Bogdan knew of her injury and she knew of its cause in fact no later than July 16, 1996. Unlike Catz, where the plaintiff had to draw a connection between two seemingly separate injuries that eventually proved to be one single event, Bogdan had all of the relevant facts in front of her at the time of her revision surgery. Bogdan knew, as of July 1996, that her hip had failed, that the failure occurred unusually early in the life of her hip and that the failure had caused her injury. Unlike Foster, who simply did not know that a diagnostic error had occurred, Bogdan knew that her hip had not performed as expected and that she was injured as a result. She had clear knowledge of her injury and its cause, even if she could not articulate the precise legal theory that would support her claim.

The facts show that any gap in Bogdan's knowledge was due primarily to a lack of diligence. Information became publically available as early as 1997 (indeed, according to plaintiff's brief, Zimmer knew of defects in the Centralign by 1996) that indicated a potential flaw in the Centralign hip prosthesis. Given the knowledge Bogdan possessed in 1996—that her hip had failed unusually early causing her the pain and difficulty of a revision surgery—it would not be unreasonable to think that a diligent effort to discover the cause of her injury could have led her to the necessary information no later than 1998. The record is clear that Bogdan undertook no steps to pursue this suit until November 2001 at the earliest, more than five years after her injury and more than three years after she could have discovered her claim. At best, Bogdan has proved that she did not know the precise legal theory supporting her claim until 2001, but that is not the relevant inquiry when applying the statute of limitations.

Plaintiff argues that the products liability claim is not barred by the statute of limitations

-6-

even if the design defect claim is untimely, because a product liability claim may be based solely on a failure to warn, and the facts of this case show a failure to warn that is part of a continuing course of conduct that tolls the statute of limitations. Plaintiff's assertion is unpersuasive. The duty to warns ends when the defect is discovered. Beckenstein v. Potter and Carrier, Inc., 191 Conn. 150, 162 (Conn. 1983)(holding that the duty to warn of a defective roof ended when the roof started to leak, exposing the problem). Here, the claim is that the failure to warn the plaintiff or her doctor of problems with the Centralign led to the use of a defective product. The failure of the product occurred, at the latest, on July 17, 1996 and at that time the duty to warn ended. As discussed, the record shows that Bogdan did not diligently pursue her product liability claim during the five years between 1996 and 2001, and the claim is thus time-barred.

## II. Statute of Limitations for CUTPA

An action for unfair trade practices under CUTPA must be brought no later than three years "after the occurrence of a violation under this chapter." Conn.Gen.Stat. §42-110g(f). CUTPA cannot be construed to delay the running of the statute of limitations until the cause of action has accrued or the injury has occurred. Fichera v. Mine Hill Corp., 207 Conn. 204, 212 (Conn. 1988). Plaintiffs argue that Zimmer's unfair trade practices are part of a continuing course of conduct that tolled the statute of limitations. An action cannot be part of a continuing course of conduct unless there is "evidence of a breach of a duty that remained in existence after commission of the original wrong related thereto." Id. at 209.

There is nothing in the record to show that Zimmer continued to owe a duty to Bogdan beyond July 17, 1996. Bogdan's claim is based on the theory that she was injured because her doctor chose a Centralign hip as a result of Zimmer's misrepresentations. There is no factual dispute that the allegedly faulty Centralign prosthesis was removed in 1996. Assuming,

arguendo, that the statute of limitations on the CUTPA claim did not begin to run until some time after the initial insertion of the Centralign prosthesis, there is nothing in the record to support a tolling of the statute of limitations beyond the removal of the offending product. Bogdan had to bring her CUTPA claim no later than July 17, 1999, and she did not. The CUTPA claim is time-barred.

### III. Statute of Limitations for Fraud

The statute of limitations for claims of fraud is "three years from the date of the act or omission complained of." Conn.Gen.Stat. §52-577. The analysis finding the CPLA and CUTPA claims time-barred applies with equal force to the fraud claim. Plaintiff offers no evidence that she diligently pursued this lawsuit and no compelling justification for her failure to act when the fraud became apparent, i.e., at the premature failure of the hip prosthesis. Plaintiff cannot plead ignorance of the facts when there is no evidence of interest in pursuing legal action for more than five years, and she cannot claim continuing conduct when there is no evidence of injury after July 1996. The facts show that the act or omission occurred, at the latest, on July 17, 1996, a time far more than three years prior to the commencement of this action. The claim of fraud is time-barred.

### IV. Claim for Loss of Consortium

A claim for loss of consortium is "derivative of the injured spouse's action" and is thus "barred when the suit brought by the injured souse has been terminated by settlement or by an adverse judgment on the merits." Hopson v. St. Mary's Hospital, 176 Conn. 485, 494 (Conn. 1979). All of Stacia Bogdon's claims are dismissed as time barred. As there remain no causes of action brought by the injured spouse, Frank Bogdan's derivative claim for loss of consortium is also dismissed.

## Conclusion

The pending action, Stacia and Frank Bogdan v. Zimmer, Inc, No. 3:02cv637 (DJS), was consolidated with the matter of Dunn v. Zimmer, No. 3:00cv1306 (DJS), for the purpose of conducting discovery. The pending motion for summary judgment was filed in the lead case. This decision concerns only the claims brought by Stacia and Frank Bogdan.

The motion for summary judgment **[doc. #168]** is **GRANTED**. The claims for product liability, failure to warn, violations of CUTPA and common law fraud are all time barred by the three-year statute of limitations. Accordingly, the derivative claim for loss of consortium is also dismissed. Judgment shall enter in favor of the defendant, Zimmer, on all counts of the complaint. The Clerk of the Court is ordered to close the case, No. 3:02CV637 (DJS).

**IT IS SO ORDERED** at Hartford, Connecticut, this ___29th___ day of March, 2005.

/s/DJS
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**