UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOLORES DUNN, et al., | : | |
| | : | MASTER DOCKET NO. |
| Plaintiffs, | : | 3:00CV1306 (JCH) |
| | : | [Pertains only to |
| v. | : | 3:01CV518(JCH)] |
| | : | |
| ZIMMER, INC., | : | |
| | : | |
| Defendant. | : | MAY 20, 2005 |

**ZIMMER, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS RENEWED MOTION FOR
<u>SUMMARY JUDGMENT REGARDING STATUTE OF LIMITATIONS</u>**

Defendant Zimmer, Inc. ("Zimmer"), by counsel, submits its Memorandum of Law in Support of Its Renewed Motion for Summary Judgment Regarding Statute of Limitations.

<u>**INTRODUCTION**</u>

On May 28, 2002, Zimmer filed a Motion for Summary Judgment, demonstrating that all of Plaintiff Joann Lopes' claims against Zimmer are barred by the applicable statutes of limitations. On March 21, 2003, this Court denied that Motion without prejudice, deciding to consider the statute of limitations issues in conjunction with the substantive arguments raised in Zimmer's Motion for Summary Judgment filed on December 5, 2002. On March 31, 2005, the Court issued a ruling on Zimmer's December 5, 2002 Motion, dismissing all of Ms. Lopes' claims, except her design defect and failure to warn claims, on grounds other than statute of limitations. The Court did not address Zimmer's statute of limitations arguments in that ruling.

However, this Court on March 29, 2005, granted Zimmer's nearly identical Motion for Summary Judgment filed against Plaintiffs Frank and Stacia Bogdan in *Stacia Bogdan and Frank Bogdan v. Zimmer, Inc.,* Case No. 3:02CV637 (DJS), which has been consolidated with this case for discovery. In that ruling, the Court did address Zimmer's statute of limitations

arguments and held that the Bogdans' claims are barred by the applicable statutes of limitations. The material facts of Mrs. Bogdan's and Ms. Lopes' claims are nearly identical. Under settled law as recognized and applied by the Court in *Bogdan*, the statute of limitations bars Ms. Lopes' remaining design defect and failure to warn claims. Zimmer respectfully requests as well that, in addition to the grounds stated in its March 31, 2005 Memorandum of Decision, the Court grant Zimmer summary judgment on Ms. Lopes' manufacturing defect, Connecticut Unfair Trade Practices Act and common law fraud claims on statute of limitations grounds as well.[1]

## STATEMENT OF FACTS

The following facts are relevant to this motion, supported by Zimmer's Local Rule 56(a)(1) Statement ("Stmt.") and attached materials and cannot genuinely be disputed by any admissible evidence.

### A.   Ms. Lopes' Hip Replacement.

In March 1995, Ms. Lopes had her left hip replaced with a Zimmer Centralign Precoat hip prosthesis femoral stem (the "Device"). (Stmt. ¶ 2.) In August or September of 1996, Ms. Lopes began having pain in her left hip and heard a "clicking sound" when she walked. (Stmt. ¶ 3.) Ms. Lopes went to see her doctor, Dr. Bruce Moeckel, to try to find out why she was having pain. (*Id.*) In January 1997, Dr. Moeckel saw on Ms. Lopes' x-rays signs that the Device was loosening and told Ms. Lopes that the Device might be loose. (Stmt. ¶ 4.) Dr. Moeckel ordered a bone scan for Ms. Lopes and was able to determine from the results of

---

[1] Zimmer recognizes that the Court in its March 31, 2005 Memorandum of Decision granted Zimmer summary judgment on Ms. Lopes' manufacturing defect, Connecticut Unfair Trade Practices and common law fraud claims on grounds other than the statute of limitations. Zimmer seeks a ruling on the statute of limitations issue as an additional ground that would support this Court's decision should Ms. Lopes appeal. By resolving the issue now, the Court could avoid the need for a possible remand and subsequent appeal dealing solely with the statute of limitations issues.

-3-

the bone scan that Ms. Lopes' device was loose. (*Id.*) Dr. Moeckel shared these findings with Ms. Lopes. (*Id.*)

On February 7, 1997, Dr. Moeckel reviewed with Ms. Lopes another doctor's conclusion that the Device had failed. (Stmt. ¶ 5.) Dr. Moeckel told Ms. Lopes that the Device had loosened sooner than he would have hoped. (*Id.*) He recommended revision surgery.

Dr. Moeckel referred Ms. Lopes to Dr. Grady-Benson, whom she saw on February 11, 1997. (Stmt. ¶¶ 5-6.) At that visit with Dr. Grady-Benson, Ms. Lopes first learned that the clicking sound and her pain might be attributable to a problem with the Device. (Stmt. ¶ 6.) Dr. Grady-Benson told Ms. Lopes when he met with her that there was loosening of the Device and he showed Ms. Lopes on an x-ray where the loosening was. (*Id.*) When Dr. Grady-Benson told Ms. Lopes in February 1997 that the Device was loose, Ms. Lopes felt she was starting to get an explanation for why she was having so much pain. (Stmt. ¶ 7.) Ms. Lopes thought the Device would last ten to 15 years and did not expect to have a loose stem in early 1997. (*Id.*)

Ms. Lopes had revision surgery on her left hip on March 14, 1997. (Stmt. ¶ 8.) After the surgery, Ms. Lopes did not conduct any investigation or inquiry as to what caused the device to loosen. (Stmt. ¶ 9.)

Ms. Lopes did not file her product liability claim against Zimmer until March 28, 2001. (Stmt. ¶ 10.)

**B.     Zimmer's Motion for Summary Judgment.**

On May 28, 2002, Zimmer filed its Motion for Summary Judgment, arguing that all of Ms. Lopes' claims were time-barred by the relevant statutes of limitations. (Zimmer's May 28, 2002 Motion for Summary Judgment and supporting memorandum.) In that Motion, Zimmer argued, among other things, that Ms. Lopes' claims under the Connecticut Products Liability

Act, Conn. Gen. Stat. § 52-572m, *et seq.* ("CPLA"), were barred by the CPLA's three year statute of limitations. (Memorandum in Support of Zimmer's May 28, 2002 Motion for Summary Judgment at 5-9.) Zimmer based its argument on the fact that Ms. Lopes had undergone revision surgery on March 14, 1997, more than three years before she filed her CPLA claims on March 28, 2001. (*Id.*) Zimmer argued that Ms. Lopes discovered or should have discovered all the facts necessary to support her claim by March 14, 1997, the date of her revision surgery. (*Id.*)

By Order dated March 3, 2003, this Court denied without prejudice Zimmer's May 28, 2002 Motion for Summary Judgment. The Court stated that it would consider the statute of limitations issues in conjunction with the other substantive arguments raised in Zimmer's Motion for Summary Judgment filed on December 5, 2002. (March 3, 2003 Order.) On March 31, 2005, the Court granted summary judgment in Zimmer's favor on Ms. Lopes' manufacturing defect, Connecticut Unfair Trade Practices Act, common law fraud and punitive damages claims. (March 31, 2005 Memorandum of Decision.) The Court found a genuine issue of material fact with regard to Ms. Lopes' design defect and failure to warn claims under the CPLA. (*Id.*) In its opinion, the Court did not address Zimmer's statute of limitations arguments, apparently overlooking its March 3, 2003 Order. (*See id.*)

**C.     The Bogdan Ruling.**

On March 29, 2005, this Court granted summary judgment in Zimmer's favor in a case that has been consolidated with Ms. Lopes' case for purposes of discovery, *Stacia Bogdan and Frank Bogdan v. Zimmer, Inc.,* Case No. 3:02CV637 (DJS). *Dunn v. Zimmer, Inc.*, No. 3:03CV637(DJS), 2005 WL 752214 (D. Conn. March 29, 2005)(A true and correct copy of the March 29, 2005 Memorandum of Decision is attached as Ex. A.) In its opinion, this Court held

that all of the Bogdans' claims are barred by the statute of limitations. *Id.* This Court in its Decision recognized as undisputed these facts:

On October 6, 1994, Dr. Bruce Moeckel replaced Mrs. Bogdan's right hip with a Zimmer Centralign hip prosthesis. *Id.* at *1. Approximately one year later, on October 18, 1995, Mrs. Bogdan told Dr. Moeckel that she was developing increasing pain in her right thigh. *Id.* Dr. Moeckel took x-rays of Mrs. Bogdan's hip and saw signs that the hip prosthesis was loosening. *Id.* Dr. Moeckel informed Bogdan of the loosening and told her that it was occurring earlier than he would have expected from a cemented femoral stem. *Id.* Dr. Moeckel monitored the hip with bone scans and x-rays during the period from October 1995 to June 1996 – at each examination the hip showed signs of loosening. *Id.*

Dr. Moeckel explained to Mrs. Bogdan that her hip was loose and that she would need a revision surgery to implant a second replacement hip. *Id.* Mrs. Bogdan had initially understood that her hip would last for ten years and she asked Dr. Moeckel why her hip failed earlier than that time. *Id.* The revision surgery took place on July 16, 1996. *Id.* Mrs. Bogdan filed her complaint against Zimmer on April 10, 2002. (*Id.*)

## ARGUMENT

The Court should enter summary judgment in Zimmer's favor on Ms. Lopes' design defect and failure to warn product liability claims.[2] The Court in addition should determine that Ms. Lopes' manufacturing defect, Connecticut Unfair Trade Practices Act and common law fraud claims are barred by the statute of limitations and should enter summary judgment for Zimmer on statute of limitations grounds as well as the grounds set forth in the March 31,

---

[2] The summary judgment standard is familiar: The Court should grant summary judgment if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. *Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir. 1992) (internal citation omitted ) (alteration in original).

2005 Memorandum of Decision. The Court has discretion to grant the relief Zimmer requests whether that relief is characterized as: (1) a separate ruling on the statute of limitations issue; or (2) a modification of the March 31, 2005 Memorandum of Decision. There can be no doubt that this Court has authority to rule on Zimmer's pending Motion for Summary Judgment. Judge Squatrito while the case was assigned to him expressly stated his intent to address the statute of limitations issue in connection with the broader motion but did not do so. Further, it is well established that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment, and may be modified to the same extent if the case is reassigned to another judge. *In re "Agent Orange" Product Liability Litigation*, 733 F.2d 10, 13 (2nd Cir. 1984)(district court reversed previous summary judgment ruling in light of change of law); *see also DeMarco v. Sadiker*, 952 F. Supp. 134, 141 (E.D.N.Y. 1996)(district court modified prior ruling on motion to dismiss after determining prior analysis was incorrect).

### I.  MS. LOPES' PRODUCT LIABILITY CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

The statute of limitations for claims brought pursuant to the CPLA is three years "from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered." Conn. Gen. Stat. §52-577a. A cause of action for product liability accrues when the plaintiff suffers an actionable harm. *Gnazzo v. G.D. Searle & Co.*, 973 F. 2d 136, 138 (2d Cir. 1992). "Actionable harm occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action." *Lambert v. Stovell*, 205 Conn. 1, 6 (Conn. 1987). As a matter of law a plaintiff "discovers" a product liability claim when the plaintiff first could have successfully maintained the action. *Dennis v. ICL, Inc.*, 957 F. Supp. 376, 379 (D. Conn.

1997).  "The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories."  *Catz v. Rubenstein*, 201 Conn. 39, 47 (Conn. 1986).

As the Court recognized in the *Bogdan* ruling, Connecticut statute of limitations precedent is well established.  *Dennis v. ICL, Inc.* is illustrative.  In that case, the plaintiff brought a product liability action against the manufacturer of a cash register, alleging that she suffered carpal tunnel syndrome as a result of using the cash register at her job.  *Dennis*, 957 F. Supp. at 377.  The plaintiff began to experience physical problems from repetitive activity in September, 1991, the same month that the plaintiff's doctor informed the plaintiff that her injuries might be due to her work activity and diagnosed her with "overuse syndrome, question of arthritis."  *Id.*  The plaintiff's condition worsened, and on November 5, 1991, the plaintiff's doctor diagnosed her as having carpal tunnel syndrome as a result of her work as a cashier.  *Id.* at 378.  The plaintiff filed her complaint against the cash register manufacturer on November 1, 1994.  *Id.*

On these facts, this Court decided that the plaintiff's claim accrued when she first sought treatment in September, 1991.  *Id.* at 380.  The Court reasoned that the plaintiff knew in September 1991 that her symptoms were related to her employment even though she did not yet know the full extent of her injuries.  *Id.*  The plaintiff, however, argued that she did not discover her injury until November 5, 1991, when her doctor diagnosed her with employment-caused carpal tunnel syndrome, and ruled out two differential diagnoses.  *Id.* at 379.  This Court rejected that argument and granted summary judgment for the defendant on statute of limitations grounds, stating that "[t]o accept the plaintiff's claims, 'would vitiate all discovery statutes of limitation[s],' and 'postpone accrual until a time of plaintiff's own choosing.'"  *Id.* at 380 (quoting *BellSouth*, 77 F.3d at 614).

Similarly, in *Gnazzo v. G.D. Searle & Co.*, the United States Court of Appeals for the Second Circuit applied Connecticut law and held that the plaintiff discovered or *should have discovered* her injury and the defendant's causal connection to her injury long before the time the plaintiff's doctor told her of her condition and the product's causal connection. *Gnazzo*, 973 F.2d at 138. The plaintiff in *Gnazzo* had an IUD implanted in 1974. *Id.* at 137. The plaintiff was treated for IUD-associated pelvic inflammatory disease (PID) once in 1975, again less than a year later, had the IUD removed in 1981, and about that same time heard that IUDs could be damaging. *Id.* It was not until eight years later (in 1989), however, that the plaintiff's doctor informed her that she was infertile because of PID-induced adhesions caused by her prior use of the IUD. *Id.* The Court of Appeals held that the plaintiff's 1990 lawsuit was time-barred because the plaintiff knew by 1981 that she had "*some form* of actionable harm." *Id.* at 138. (emphasis in original). *See also Lambert*, 529 A.2d at 713 (finding that the plaintiff "was aware of circumstances indicating that he had suffered a form of 'actionable harm' and should have discovered his injury" when he knew his ankle fusion surgery was unsuccessful).

Applying the same principles found in Connecticut law, other courts in medical device product liability cases have held that a plaintiff's cause of action accrues no later than the date of revision surgery. In *McCollin v. Synthes, Inc.*, 50 F. Supp. 2d 1119 (D. Utah 1999), *Caplin v. Danek Medical, Inc.*, No. 94-2542-A, 1999 U.S. Dist. LEXIS 1187 (M.D. La. Jan. 8, 1999), and *Conger v. Danek Medical, Inc.*, No. 4:96-CV-739-A, 1998 WL 1041331 (N.D. Tex. Dec. 14, 1998), for example, the courts granted the defendants summary judgment and held that the plaintiff's cause of action in each case accrued on the date of the revision surgery. *See also Sawtell v. E.I. Du Pont de Nemours and Company, Inc.*, 22 F.3d 248, 252 (10th Cir. 1994) (explaining that reasonable minds could not differ that the plaintiff knew or should have known

of the specific cause of her pain by the time of her surgery to remove her temporomandibular joint prostheses); *Dunlap v. Medtronic, Inc.*, 47 F. Supp. 2d 888, 892 (N.D. Ohio 1999) (stating that the plaintiff was "clearly put on notice as of the [revision] surgery of the need to pursue . . . possible remedies").[3]

Applying the reasoning of those cases, this Court in *Bogdan* granted Zimmer summary judgment and held that Mrs. Bogdan knew of her injury more than three years before she filed suit:

> The facts show that Bogdan knew as early as October 1995 that her hip was failing and that she was informed as early as April 15, 1996 that the failure was occurring earlier than her doctor anticipated. Bogdan's revision surgery and the replacement of the allegedly defective hip took place on July 16, 1996. Bogdan does not dispute these facts, instead claiming that she did not have sufficient knowledge to bring her claim until November, 2001, when she was informed by Dr. Moeckel that her initial hip prosthesis was the subject of lawsuits alleging a defective design that could explain the initial failure of the 1994 surgery.

*Dunn*, 2005 WL 752214, slip op. at *3.

The facts in this case are almost identical. As in *Bogdan*, Ms. Lopes knew of her injury more than three years before she filed suit. As early as January 1997, Ms. Lopes knew that her hip was failing and was informed as early as February 1997 that the failure was occurring earlier than Dr. Moeckel would have anticipated. Her revision surgery took place on March 14, 1997 – over four years before she filed suit on March 28, 2001.

---

[3] Courts similarly have found that plaintiffs knew or should have known of their injury when the medical devices implanted in them did not alleviate their pain or made their condition worse. *See Breaux v. Danek Medical, Inc.*, No. Civ.A. 95-1730, 1999 WL 64929, slip op. at *5-6 (E.D. La. Feb. 4, 1999) (granting the defendant's motion for summary judgment because the plaintiff knew shortly after the implant surgery that the device was not doing what it was supposed to do, and the plaintiff's knowledge that the device had failed began the running of the statute of limitations); *Mason v. Danek Medical, Inc.*, No. Civ.A. 95-3481, 1998 WL 774176, slip op. at *2 (E.D. La. 1998) ("[c]ertainly plaintiff's symptoms [of unrelieved pain] were sufficient to incite curiosity, to excite attention or to put on guard a reasonably minded person and called for an inquiry").

-9-

Even if the Court declines to follow *Bogdan's* use of the revision date as the salient date, the undisputed facts show that Ms. Lopes' cause of action accrued well prior to the date of her revision operation. For example, Ms. Lopes began having pain in her left hip in August or September of 1996 and heard a "clicking sound" when she walked; sought medical treatment for these symptoms from Dr. Moeckel in 1996 and 1997 and from Dr. Grady-Benson in February, 1997; saw both doctors in early 1997 to find out why she was having pain and was told by both doctors that the Device might be loose; was told in February, 1997 by Dr. Moeckel that the Device had loosened sooner than he had hoped; and has admitted that she did not expect the Device to loosen as early as it did. By early 1997, Ms. Lopes was experiencing such pain in her left hip that she was on crutches and could no longer walk on her left leg, go to work or drive a car.

Like the plaintiff in *Dennis*, Ms. Lopes' claims against Zimmer accrued when she first sought treatment for her injuries in 1996 even if she did not know the full extent of her injuries at that time. *See Dennis*, 957 F. Supp. at 380. Like the plaintiff in *Gnazzo*, Ms. Lopes knew that she had some form of actionable harm *at the latest* in early 1997 when she learned that the Device had loosened in a time period earlier than she and her doctor had expected, that her symptoms were caused by the loosened Device, and that the Device needed to be replaced. Under the force of the reasoning in *Dennis* and *Gnazzo,* therefore, Ms. Lopes discovered or should have discovered her injury and Zimmer's alleged causal connection to her injury long before March 14, 1997. It is undisputed that as early as August or September of 1996 Ms. Lopes was aware of *circumstances* indicating she had suffered some form of actionable harm, and she therefore should have discovered her injury at that time. *See Lambert*, 529 A.2d at 713.

The Court should enter summary judgment in Zimmer's favor on Ms. Lopes' design defect and failure to warn product liability claims. The analysis set forth above likewise compels the conclusion that the Court also should hold that, in addition to the grounds set forth in its March 31, 2005 Memorandum of Decision, summary judgment in Zimmer's favor on Ms. Lopes' manufacturing defect claim was properly entered because the manufacturing defect claim is barred by the statute of limitations.

## II. Ms. Lopes' Connecticut Unfair Trade Practices Act Claims are Barred by the Statute of Limitations.

An action for unfair trade practices under the Connecticut Unfair Trade Practices Act ("CUTPA") must be brought no later than three years "after the occurrence of a violation under this chapter." Conn. Gen. Stat. § 42-110g(f). The limitations period begins to run on the date the unfair practice occurs. *See Ives v. NMTC, Inc.*, 746 A.2d 236, 239 (Conn. Super. 1999); *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 287 (2d Cir. 1991). The Connecticut Supreme Court has rejected the application of any discovery or accrual rule, holding that the statutory language "precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." *Fichera v. Mine Hill Corp.*, 541 A.2d 472, 476 (Conn. 1988).

Connecticut courts and courts applying Connecticut law have held that CUTPA claims are time-barred when the plaintiff sues more than three years after the completion of the transaction or event to which the alleged unfair practice relates, even though the plaintiffs argue unsuccessfully that they did not learn of the alleged unfair practice until later. In *Fichera*, for example, the defendants failed to make promised property improvements and never notified the plaintiffs that the defendants did not intend to complete the property as represented. *Id.* at 473. The plaintiffs brought their CUTPA claim, however, more than three years after they purchased

their property from the defendants, and the court held that claim was time-barred. *Fichera*, 541 A.2d at 476. Similarly, in *Zaro Licensing, Inc.*, the plaintiff brought a claim under CUTPA based on the alleged unfair sale of a franchise. The court held that the CUTPA claim was barred because it was filed more than three years from the sale of the franchise. *Zaro Licensing, Inc.*, 779 F. Supp. at 287.

*Fichera* and *Zaro Licensing* represent a practical and straightforward consequence of the fact that (a) proximate cause is an element of a CUTPA claim, *Connecticut Pipe Trades Health Fund v. Philip Morris, Inc.*, 153 F. Supp. 2d 101, 109 (D. Conn. 2001); and (b) as the Connecticut Supreme Court recently has made clear, to have standing to sue under CUTPA a plaintiff must allege a direct injury as a consequence of a defendant's conduct, *Ganim v. Smith and Wesson Corp.*, 780 A.2d 98, 133-34 (2001). Common sense dictates that any alleged unfair practice must have occurred prior to the completion date of the event or transaction constituting the injury alleged by the plaintiff to be proximately caused by the unfair practice. Rather than debate when the supposed unfair practice occurred (the operative date under the law), the courts in *Fichera* and *Zaro Licensing* used the later date of the completion of the relevant transaction and concluded that a lawsuit more than 3 years after that date was time-barred.

Here, Ms. Lopes alleges that Zimmer violated CUTPA by placing a dangerous product on the market, failing to notify or warn users of the product's danger and failing to remove the product from the market once its dangers were known to Zimmer. Although Ms. Lopes is spare in the Complaint about explaining the relationship between these alleged unfair practices and an injury to her, the inference is that had Zimmer not withheld information, Ms. Lopes' physician would not have implanted the Device. These alleged omissions and inactions,

therefore, are relevant to Ms. Lopes because of her physician's decision to implant the Device. Applying *Fichera* and *Zaro Licensing* leads to the conclusion that Ms. Lopes' CUTPA claim accrued at the latest on the date of her implant surgery (1995), the last event for which she can claim some injury related to the alleged unfair practice. Ms. Lopes' CUTPA claim came 6 years later and is time-barred.

In *Bogdan*, this Court rejected Mrs. Bogdan's argument that the statute of limitations on her CUTPA claim was tolled because Zimmer's alleged unfair trade practices were part of a continuing course of conduct. The Court recognized that "[a]n action cannot be part of a continuing course of conduct unless there is 'evidence of a breach of a duty that remained in existence after commission of the original wrong related thereto.'" *Fichera*, 207 Conn. at 209. The Court held:

> There is nothing in the record to show that Zimmer continued to owe a duty to Bogdan beyond July 17, 1996. Bogdan's claim is based on the theory that she was injured because her doctor chose a Centralign hip as a result of Zimmer's misrepresentations. There is no factual dispute that the allegedly faulty Centralign prosthesis was removed in 1996. Assuming, arguendo, that the statute of limitations on the CUTPA claim did not begin to run until some time after the initial insertion of the Centralign prosthesis, there is nothing in the record to support a tolling of the statute of limitations beyond the removal of the offending product. Bogdan had to bring her CUTPA claim no later than July 17, 1999, and she did not. The CUTPA claim is time-barred.

*Bogdan*, 2005 WL 752214, at *5.

As this Court found in *Bogdan*, there is nothing in the record to support a tolling of the statute beyond the date of Ms. Lopes' revision surgery – March 14, 1997. Any duty Zimmer might have owed her certainly ceased on that date. The Court should hold that, in addition to the grounds set forth in its March 31, 2005 Memorandum of Decision, summary judgment in

-13-

Zimmer's favor on Ms. Lopes' CUTPA claim was properly entered because the CUTPA claim is barred by the statute of limitations.

### III.     Ms. Lopes' Fraud Claim is Barred by the Statute of Limitations.

The statute of limitations for fraud claims is "three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. It is well-established in cases alleging fraud that the limitations period under Section 52-577 commences when the alleged misrepresentation or omission first occurs and not when a plaintiff discovers an alleged injury. *See T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 33 F. Supp. 2d 122, 126 (D. Conn. 1998). In *Collum v. Chapin*, 671 A.2d 1329 (Conn. App. Ct. 1996), the Appellate Court of Connecticut stated:

> Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. . . . When conducting an analysis under [Section] 52-577, 'the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed.'

*Id.* at 1331 (quoting *Shuster v. Buckley*, 500 A.2d 240, 242 (Conn. App. Ct. 1985)).

Connecticut courts and courts applying Connecticut law have held consistently that the statute of limitations bars a fraud claim brought more than three years after the alleged misrepresentation. *See, e.g., T.F.T.F. Capital Corp.*, 33 F. Supp. 2d at 126 (holding that the plaintiff's fraudulent misrepresentation claims were barred by the statute of limitations because the plaintiff's action was commenced more than three years after the alleged misrepresentations were made); *Gibbons v. NER Holdings, Inc.*, 983 F. Supp. 310, 314 (D. Conn. 1997) (holding that the plaintiff's fraud action was barred by statute of limitations because suit was filed more than three years from the date the plaintiff received the fraudulent information).

*Lettick v. Nationwide Mut. Ins. Co.*, No. 3:98CV1928 (AVC), 2000 WL 863028, slip op. at *9 (D. Conn. March 31, 2000) is instructive. In *Lettick,* the plaintiff alleged that the defendant made certain misrepresentations in an employee handbook. The plaintiff received the handbook in 1992 but did not file her complaint until 1998. *Id*. at *9. The court held that the plaintiff "learned of any allegedly fraudulent misrepresentations or omissions in November 1992, at the time [the defendant] gave the plaintiff the employee handbook," that the receipt of the handbook triggered the limitations period, and that the statute of limitations barred the fraud claim brought more than three years later. *Id*.

>   Applying that reasoning, this Court held in *Bogdan*:

>>   The analysis finding the CPLA and CUTPA claims time-barred applies with equal force to the fraud claim. Plaintiff offers no evidence that she diligently pursued this lawsuit and no compelling justification for her failure to act when the fraud became apparent, i.e., at the premature failing of the hip prosthesis. Plaintiff cannot plead ignorance of the facts when there is no evidence of interest in pursuing legal action for more than five years, and she cannot claim continuing conduct when there is no evidence of injury after July 1996. The facts show that the act or omission occurred, at the latest, on July 17, 1996, a time far more than three years prior to the commencement of this action.

*Bogdan*, 2005 WL 752214, slip op. at *5. As in *Bogdan*, the analysis under the CPLA and CUTPA is also applicable to Ms. Lopes' fraud claims. She, like Mrs. Bogdan, failed to pursue her lawsuit once the alleged fraud became apparent, upon the early failure of her hip implant. Any act or omission relating to Ms. Lopes' occurred, at the latest, on March 14, 1997 – four years before Ms. Lopes filed her Complaint. As discussed above, Ms. Lopes cannot claim ignorance of the facts when she failed to pursue her legal action for more than four years. Further, there is no basis for applying the continuing conduct doctrine because there was no injury after March 14, 1997 and, thus, no continuing duty on Zimmer's part. Ms. Lopes' fraud

claim is time-barred. The Court should hold that, in addition to the grounds set forth in its March 31, 2005 Memorandum of Decision, summary judgment in Zimmer's favor on Ms. Lopes' fraud claim was properly entered because the fraud claim is barred by the statute of limitations.

## CONCLUSION

The facts in the *Bogdan* case are nearly identical to those in this case. Accordingly, this Court should apply its ruling in *Bogdan* and hold that Ms. Lopes' design defect and failure to warn claims are time-barred. The Court also should hold that, in addition to the grounds set forth in its March 31, 2005 Memorandum of Decision, summary judgment in Zimmer's favor on Ms. Lopes' manufacturing defect, Connecticut Unfair Trade Practices and common law fraud claims was properly entered because those claims are barred by the statute of limitations.

Respectfully submitted,

ZIMMER, INC.

Dated:  May 20, 2005

By:    /s/ Robert E. Koosa
Albert J. Dahm (ct21710)
Michael S. Elvin (ct21711)
Dahm & Elvin, LLP
9604 Coldwater Road - Suite 201
Fort Wayne, IN 46825
Telephone:  (260) 497-6000

Francis H. Morrison III (ct 04200)
Robert E. Koosa (ct 26191)
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, Connecticut  06103-3499
(860) 275-0100

Its Attorneys

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 20th day of May, 2005, a copy of the foregoing DEFENDANT ZIMMER, INC.'S LOCAL RULE 56(a)(1) STATEMENT IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT REGARDING STATUTE OF LIMITATIONS was served on the following counsel of record by first-class mail, postage prepaid:

>Robert I. Reardon, Jr.
>THE REARDON LAW FIRM, P.C.
>160 Hempstead Street
>P.O. Drawer 1430
>New London, Connecticut  06320

>/s/ Robert E. Koosa
>Robert E. Koosa