UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOLORES DUNN, ET AL, | : | CIVIL ACTION NO: |
| Plaintiffs, | : | 3:00CV1306 (JCH) |
| | : | |
| | : | pertains only to 3:01CV518(JCH) |
| | : | |
| | : | |
| V. | : | |
| | : | |
| ZIMMER, INC. | : | |
| Defendant. | : | JUNE 8, 2005 |

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ZIMMER, INC.'S RENEWED MOTION FOR SUMMARY JUDGMENT REGARDING STATUTE OF LIMITATIONS

The plaintiff in the above captioned matter, **JOANN LOPES**, hereby respectfully provides the following memorandum of law in opposition to the defendant Zimmer, Inc.'s ("Zimmer") May 20, 2005 so-called "Renewed" Motion for Summary Judgment Regarding Statute of Limitations. For the reasons that follow, this Court should deny Zimmer's "renewed" motion for summary judgment.

I.   **STATEMENT OF PROCEEDINGS**

The plaintiff alleges that she sustained injuries and losses due to the defective nature of the Centralign hip component that was implanted in her on March 21, 1995.  The plaintiff alleges that Zimmer defectively designed this product and failed to warn consumers, including the plaintiff, of its dangers.  In a Memorandum of Decision dated March 31, 2005, this Court, Squatrito, J., granted in part and denied in part Zimmer's motion for summary judgment in this matter.  In the aftermath of this ruling, this matter is now ready to proceed to trial on the plaintiff's claims of defective design and failure to warn.

In its "Renewed" Motion for Summary Judgment, Zimmer alleges that Judge Squatrito forgot to address Zimmer's claims that the plaintiff's cause of action should be barred by the statute of limitations.  The plaintiff has previously filed a Motion to Strike Zimmer's "Renewed" Motion for Summary Judgment.  By filing this opposition memorandum, the plaintiff does not waive any of the arguments set forth in her previously filed motion to strike.

## II.  STATEMENT OF FACTS

Joann Lopes first became aware that she had arthritic hips in 1982 as a result of x-rays that were taken following a motor vehicle accident.  (See October 24, 2001 deposition of Joann Lopes attached as Exhibit A, ("Exhibit A, Lopes Deposition") at page 13.)  In 1995, Ms. Lopes reached a point where it was necessary for her left hip to be replaced.  (See Exhibit A, Lopes Deposition at p. 27.)  Dr. Bruce Moeckel was Ms. Lopes's treating orthopedist at that time.  (See Exhibit A, Lopes Deposition at p. 27.)  Prior to the 1995 left hip replacement, Dr. Moeckel discussed with Ms. Lopes the surgical technique that he intended to employ but did not provide any information regarding the manufacturer of the device that he intended to implant in Ms. Lopes.  (See Exhibit A, Lopes Deposition at p. 28.)  Ms. Lopes did not know that Dr. Moeckel intended to implant a Zimmer hip prosthesis in her left side.  (See Exhibit A, Lopes Deposition at p. 29.)  Prior to her 1995 left hip replacement, Ms. Lopes never received any literature from Zimmer regarding the device that was to be implanted in her left side.  (See Exhibit A, Lopes Deposition at p. 29.)  At the time that Ms. Lopes had her left hip replacement operation in 1995, she had never heard of Zimmer.  (See Exhibit A, Lopes Deposition at p. 29.)  Ms. Lopes did not

3

recall receive any information, prior to the 1995 left hip replacement operation, that there was a risk of the device loosening. (See Exhibit A, Lopes Deposition at p. 31.)

Following the 1995 left hip replacement, Ms. Lopes began to hear a clicking sound and felt pain in the area of the left hip replacement. (See Exhibit A, Lopes Deposition at p. 46.) At that time, Ms. Lopes did not think that there was any problem with the device that had been implanted in her left side. (See Exhibit A, Lopes Deposition at p. 47.) In a visit on September 4, 1996, Dr. Moeckel noted that Ms. Lopes had noticed clicking in her left hip, but Dr. Moeckel considered this to be commonplace and not something about which to be concerned. (See April 11, 2002 deposition of Bruce H. Moeckel, M.D. attached as Exhibit B, ("Exhibit B, Dr. Moeckel Deposition") at page 23.)   Further, Dr. Moeckel did not identify any problem with the Zimmer hip prosthesis at that time. (See Exhibit A, Lopes Deposition at p. 47.)

Dr. John Grady-Benson first saw Ms. Lopes on February 11, 1997 and revised her hip on March 14, 1997. (See April 16, 2002 deposition of John Grady-Benson, M.D. attached as Exhibit C, ("Exhibit C, Dr. Grady-Benson Deposition") at page 288.) In treating Ms. Lopes, Dr. Grady-Benson did not have

4

the advantage of previous radiographs and because he wasn't at her first surgery he had a lesser understanding of the reason that her implant failed.  (See Exhibit C, Dr. Grady-Benson Deposition at pp. 293.)

Dr. John Grady-Benson performed a revision surgery on Ms. Lopes's left hip in March 1997.  (See Exhibit A, Lopes Deposition at p. 51.)  Prior to this surgery, Dr. Grady-Benson told Ms. Lopes that her prosthesis had loosened.  (See Exhibit A, Lopes Deposition at p. 52.)  Dr. Grady-Benson did not tell Ms. Lopes that the original device implanted in her left side was a Zimmer device.  (See Exhibit A, Lopes Deposition at p. 52.)  Dr. Grady-Benson did not tell Ms. Lopes what caused the hip prosthesis to loosen.  (See Exhibit A, Lopes Deposition at p. 69.)    Dr. Grady-Benson never told Ms. Lopes that it was the device, itself, that had caused the loosening.  (See Exhibit A, Lopes Deposition at p. 70.)  Dr. Moeckel never gave Ms. Lopes an answer as to why her prosthesis failed.  (See Exhibit B, Dr. Moeckel Deposition at pp. 28-30.)  Ms. Lopes never saw the prosthesis that Dr. Grady-Benson removed in 1997.  (See Exhibit A, Lopes Deposition at p. 56.)

Ms. Lopes learned for the first time in 2000 that the Zimmer device may have caused the loosening.  (See Exhibit A, Lopes Deposition at p. 73.)  Ms.

Lopes learned this information from other patients of Dr. Grady-Benson who had experienced similar problems. (See Exhibit A, Lopes Deposition at p. 74.)

### III.  ARGUMENT

#### A.  Standard Of Review

Fed. R. Civ. P. 56(c) provides that summary may be granted if the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. See American Intern. Group, Inc. v. London Am. Intern., 664 F.2d 348, 351 (2nd Cir. 1981). The Court should not resolve disputed issues of fact, but rather must assess whether there are any factual issues to be tried. Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2nd Cir. 1986). The Court should resolve all ambiguities and draw all reasonable inferences against the moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

#### B.  A Genuine Issue Of Material Fact Exists As To Whether Ms. Lopes Brought Her Product Liability Claims Within The Statute Of Limitations

6

Pursuant to Conn. Gen. Stat. §52-577a, a product liability claim must be brought within three years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered. Courts construing this statute have concluded that a cause of action for product liability accrues when the plaintiff suffers an actionable harm. Gnazzo v. G.D. Searle & Co., 973 F.2d 136, 138 (2nd Cir. 1992). Actionable harm occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action. Catz v. Rubenstein, 201 Conn. 39, 44, 513 A.2d 98 (1986). Actionable harm may occur when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury, and that the injury was caused by the negligence of another. Id. at 47. The harm complained of need not have reached its fullest manifestation in order for the limitation period to begin to run, rather a party need only have suffered some form of actionable harm. Id. at 43-45. **The determination of when a plaintiff in the exercise of reasonable care should have discovered actionable harm is ordinarily a question reserved for the trier of fact.** Tarnowsky v. Socci, 271 Conn. 284, 288, 856 A.2d 408 (2004); Lagassey v. State, 268 Conn. 723, 748-749, 846 A.2d 831 (2004).

In its summary judgment brief, Zimmer relies heavily upon <u>Gnazzo v. G.D. Searle & Co.</u>, 973 F.2d 136 (2nd Cir. 1992) and <u>Dennis v. ICL, Inc.</u>, 957 F.Supp. 376 (D. Conn. 1997) in support of its request for relief.  These cases are inapposite to the present controversy and provide no guidance to this Court in deciding this motion.

First, in <u>Dennis</u>, the evidence demonstrated that the plaintiff believed that she had sustained injury as a consequence of her use of a supermarket scanning device supplied by her employer and manufactured by the defendant.  The Court, in <u>Dennis</u>, addressed a situation in which the plaintiff knew that she had sustained harm as a consequence of her use of a supermarket scanning device.  She did not, however, understand the full diagnosis of all of the injuries that she had sustained within three years of her first injury.  Consequently, the plaintiff brought a product liability action against the defendant within three years of receiving a diagnosis of injury but more than three years after receiving a diagnosis of carpal tunnel syndrome caused by her use of the defendant's product.  On these facts, the district court entered summary judgment in favor of the defendant on the finding that the plaintiff's claims were time barred in that her claim was brought more than three years after she knew that she had suffered

8

injury caused by the defendant's product.

The facts of <u>Dennis</u> add nothing to the Court's analysis of the present case. This action does not present a situation, as in <u>Dennis</u>, where the plaintiff, Ms. Lopes, knew that she had suffered injury due to the conduct of Zimmer and then brought suit only after discovering the full manifestation of those injuries. Rather, the present case presents a situation, as in <u>Tarnowsky</u>, where the issue is whether the plaintiff knew or reasonably should have known that she suffered **any** actionable harm within three years of the filing of her complaint.

Likewise, in <u>Gnazzo</u>, the Second Circuit Court of Appeals upheld the district court's summary judgment order on a finding that the plaintiff knew that she had sustained harm as a result of her use of an intrauterine device ("IUD") manufactured by the defendant Searle more than three years before bringing her cause of action. In <u>Gnazzo</u>, the Court found that the plaintiff knew by 1981 that an IUD had caused her harm because she had been experiencing trouble becoming pregnant, had heard and read about how damaging IUDs could be and had established a connection between her problems and her use of the IUD. <u>See</u> <u>Gnazzo</u> at 138. The Second Circuit rejected the plaintiff's arguments that her cause of action only accrued in 1989 when she was informed that she was

9

infertile as a result of her previous use of the IUD.  As in <u>Dennis</u>, the Court's analysis turns on a finding that the plaintiff knew that she had sustained injury and knew the identity of the party causing that injury more than three years before she brought her cause of action.  Pursuant to <u>Dennis</u> and <u>Gnazzo</u>, a product liability cause of action accrues when a plaintiff knows that she has suffered harm and knows the identity of the entity causing the harm.  Under <u>Dennis</u> and <u>Gnazzo</u>, the statute of limitations is not extended upon a finding of a more serious diagnosis.  As such, <u>Dennis</u> and <u>Gnazzo</u> have no factual relationship to the present case.  Simply put, this case, unlike <u>Dennis</u> and <u>Gnazzo</u>, does not present a scenario in which Ms. Lopes knew that she had sustained an injury caused by Zimmer, yet only brought her claim when she had received a more serious medical diagnosis.

In the present case, the record indicates that Dr. Bruce Moeckel implanted a Zimmer Centralign hip prosthesis in Ms. Lopes in 1995.  Ms. Lopes was not informed that the defendant Zimmer was the designer and manufacturer of this component in 1995.  Ms. Lopes **never** received any written information from the defendant Zimmer or anyone else regarding this device.  Dr. John Grady-Benson performed a revision surgery on March 14, 1997.  Prior to this surgery, Dr.

10

Grady-Benson told Ms. Lopes that the prosthesis had loosened but did not tell Ms. Lopes what caused the prosthesis to loosen. Nor did Dr. Grady-Benson tell Ms. Lopes that the loosened device had been designed and manufactured by Zimmer. **Prior to 2000, no one ever told Ms. Lopes that it was the device, itself, that had caused the loosening and Ms. Lopes had no reason to believe that this was the case.** Ms. Lopes never saw the device after Dr. Grady-Benson removed it in 1997.

Ms. Lopes testified that she first learned in 2000 that Zimmer had designed and manufactured the device and that the device, itself, may have caused the loosening to occur.

In the present case, the plaintiff did not discover the identity of the defendant until 2000 and did not learn that the Zimmer device may have caused her injury until 2000. Actionable harm occurs when the plaintiff discovers or in the exercise of reasonable care should have discovered the essential elements of a cause of action. In the present case, the plaintiff sought medical care for her condition, provided appropriate information regarding her condition to her doctors and followed the instructions of her doctors. The plaintiff was not provided reason to believe that the cause of her injury was the defective design of the

11

Zimmer device nor was she ever provided information that Zimmer was the entity that designed and manufactured this product until 2000. Pursuant to <u>Tarnowsky</u> and <u>Lagassey</u>, the statute of limitations does not commence to run until the plaintiff has a reasonable opportunity to discover her injury, the cause of her injury and the identity of the party responsible for that injury. The determination of these issues, pursuant to <u>Tarnowsky</u> and <u>Lagassey</u> is a question of fact reserved for the trier of fact and is not amenable to summary judgment. This Court should deny the defendant's motion for summary judgment.

    **C.    The Statute Of Limitations Was Tolled By Zimmer's Continuing Course Of Conduct**

Although the statute of limitations for a product liability claim in Connecticut is three years, it is well established that when the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. <u>Handler v. Remington Arms Co.</u>, 144 Conn. 316, 321 (1957). In the present case, Ms. Lopes did not even know she had a Zimmer implant or that her problems might be attributable to Zimmer's product until late 2000. Accordingly, the facts of this case raise a genuine issue for the

jury as to whether the statute of limitations was tolled by Zimmer's continuing course of conduct.

To establish a continuing course of conduct that may toll the statute of limitations,

> there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . . <u>The continuing course of conduct doctrine is "conspicuously fact-bound."</u>

<u>Sanborn v. Greenwald</u>, 39 Conn. App. 289, 295 (1995) (emphasis added) (quoting <u>Blanchette v. Barrett</u>, 229 Conn. 256, 275 (1994)).  See also <u>Sherwood v. Danbury Hospital</u>, 252 Conn. 193 (2000), in which the Court concluded there was a genuine issue of material fact as to whether the statute of repose in Conn. Gen. Stat. § 52-584 was tolled by the continuing course of conduct doctrine on account of the defendant's wrongful conduct.  <u>Sherwood</u>, 252 Conn. at 195-96.

Under Connecticut law, the failure to warn of a product's unreasonably dangerous propensities alone constitutes a defect.  <u>Sharp v. Wyatt, Inc.</u>, 31 Conn. App. 824, 833 (1993), *aff'd*, 230 Conn. 12 (1994); <u>see also</u> <u>Gajewski v. Pavelo</u>, 236 Conn. 27, 28-29 (1996) (Under General Statutes § 52-572q, . . . a product may be defective solely because a manufacturer or seller has failed to provide adequate warnings or instructions to a claimant who has suffered harm

because of the absence of such warnings or instructions."). It is well established that whether a product is defective under Conn. Gen. Stat. § 52-572q is a question of fact for the trier of fact. The statute sets forth factors which the trier of fact may consider in determining whether warnings were required or adequate. See § 52-572q(b). These factors include the likelihood that the product would cause harm of the type suffered by the plaintiff; the seller's ability to anticipate at the time of manufacture that the product user would be aware of the product risk and nature of potential harm; and the feasibility and cost of appropriate warnings and instructions.

Here, the defendant Zimmer failed to warn the public, including the plaintiff and her doctors, that the Centralign femoral component had dangerous propensities, including a 12% catastrophic short-term failure rate. The defendant has never admitted that the Centralign was dangerous or defective, or provided adequate warnings or instructions to minimize harm, thereby tolling the statute of limitations. The United States Court of Appeals for the Second Circuit recently reaffirmed that "the post-sale duty to warn exists in negligence, and is cognizable under the CPLA." Densberger v. United Tech. Corp., 283 F.3d 110, 116 (2nd

Cir. 2002). Accordingly, the continuing failure to warn of a product's defect would constitute a continuing course of conduct which tolls the statute of limitations.

In addition, Zimmer's repeated and continuing attempts to conceal the dangerous and defective propensities of the Centralign, starting in 1996, constitute continuing fraud which tolls the statute of limitations. Fraudulent concealment of the existence of a cause of action tolls the running of the statute of limitations. See, e.g., Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111 (1983). See also In Re State Police Litigation, 888 F. Supp. 1235, 1250 & n.15 (D. Conn. 1995), *appeal dismissed* 88 F.3d 111 (2d Cir. 1996) (discussing fraudulent concealment and the continuing violation doctrine) (citing Hamilton v. Smith, 773 F.2d 461, 467 (2d Cir. 1985)); Association Against Discrimination in Employment, Inc. v. Bridgeport, 647 F.2d 256, 259-61 (2d Cir. 1981), *cert. denied*, 455 U.S. 988 (1982); Doe v. Blake, 809 F. Supp. 1020, 1025 (D. Conn. 1992); Members of Bridgeport Housing Authority Police v. Bridgeport, 85 F.R.D. 624, 637 (D. Conn. 1980); and Cross v. Huttenlocher, 185 Conn. 390, 400 (1981). Since at least 1996 Zimmer was aware of a large number of early failures with its Centralign design, yet continued

to deny and cover up the problem through the present day.  This on going course of conduct tolls the statute of limitations, such that Mrs. Lopes' action is not time-barred.  For these reasons, a genuine issue of material fact exists as to whether the product was defective under Connecticut law and whether the statute of limitations was tolled by the continuous course of conduct doctrine, or the fraudulent concealment doctrine, and the defendant's Motion for Summary Judgment should be denied.

    **D.    This Court Should Deny Zimmer's "Renewed" Motion For Summary Judgment As To Ms. Lopes's Connecticut Unfair Trade Practices Act Claims And Fraud Claims**

The Court, Squatrito, J., has dismissed, via summary judgment, the plaintiff's claims under the Connecticut Unfair Trade Practices Act ("CUTPA") and the plaintiff's claims under a theory of common law fraud.  Accordingly, the plaintiff does not respond to the defendant's arguments in its "Renewed" Motion for Summary Judgment as to these claims.  Further, since these claims have already been dismissed by the Court in its March 31, 2005, Memorandum of Decision and Order, this Court should deny, as moot, the defendant's so-called "Renewed" Motion for Summary Judgment as to the plaintiff's CUTPA and

common law fraud claims.   The plaintiff reserves its rights, under applicable law, to pursue an appeal of Judge Squatrito's order at the appropriate time pursuant to the Federal Rules of Appellate Procedure.

### III.   CONCLUSION

For the foregoing reasons, this Court should deny the defendant Zimmer, Inc.'s so called "Renewed" Motion for Summary Judgment Regarding Statute of Limitations.

          THE PLAINTIFF JOANN LOPES

By_____
Robert I. Reardon, Jr.
**THE REARDON LAW FIRM,  P.C.**
160 Hempstead Street
New London, CT  06320
Phone: 860-442-0444
Fax: 860-444-6445
Email: reardonlaw@aol.com
Federal Bar No. ct05358

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed on June 8, 2005, to the following counsel of record:

Francis H. Morrison, III, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499

Albert J. Dahm, Esq.
Michael S. Elvin, Esq.
Dahm & Elvin, LLP
9604 Coldwater Road, Suite 204
Fort Wayne, IN 46825

                                              Robert I. Reardon, Jr.
                                              **THE REARDON LAW FIRM, P.C.**
                                              160 Hempstead Street
                                              New London, CT  06320
                                              Phone: 860-442-0444
                                              Fax: 860-444-6445
                                              Email: reardonlaw@aol.com
                                              Federal Bar No. ct05358