UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOLORES DUNN, et. al., | : | |
| | : | MASTER DOCKET NO. |
| Plaintiffs, | : | 3:00cv1306 (JCH) |
| | : | [Pertains only to |
| v. | : | 3:00cv1306(JCH), 3:01cv516(JCH), |
| | : | 3:01cv517(JCH), 3:01cv518(JCH), |
| ZIMMER, INC., | : | 3:00cv2270(JCH)] |
| | : | |
| Defendant. | : | JUNE 13, 2005 |

**DEFENDANT ZIMMER, INC.'S MEMORANDUM
IN OPPOSITION TO MOTION FOR TRANSFER**

Defendant, Zimmer, Inc. ("Zimmer"), by its attorneys, respectfully submits this memorandum opposing the transfer under 28 U.S.C. § 1404(a) of these actions to the District of Minnesota. As discussed in full below, this Court should deny the Plaintiffs' motion because: (a) the Judicial Panel on Multidistrict Litigation has already denied two transfer requests involving these cases; (b) Plaintiffs have not and cannot meet their burden of demonstrating that the requested transfer is appropriate; (c) the requested transfer does not aid the convenience of the parties, the convenience of the witnesses or the interests of justice; and (d) the requested transfer would serve only to legitimize Plaintiffs' counsel's forum-shopping efforts.

**I.
INTRODUCTION**

By bringing this motion Plaintiffs' counsel seeks a third bite at the transfer (and ultimately consolidation) apple. Counsel's latest request, however, is no more deserving than the first two unsuccessful attempts and is directly contradicted by the first transfer request.

On December 11, 2002, the Judicial Panel on Multidistrict Litigation (the "Panel") denied Plaintiffs' counsel's Section 1407 transfer motion filed on behalf of the *Johnson* plaintiffs who were seeking to have their Centralign case transferred from Minnesota to Connecticut and consolidated with these cases. *In re Zimmer, Inc. (No. I)*, 237 F. Supp. 2d 1376 (J.P.M.L. 2002). In support of that motion Plaintiffs' counsel asserted that "Connecticut would be a logical choice for consolidation. The Connecticut plaintiffs have retained expert witnesses located in Cambridge, Massachusetts (Dr. Rose) and West Charlton, New York (Dr. Zeliger), both neighboring states convenient to Connecticut" such that transfer and consolidation in Connecticut "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." (Pls.' Br. Supp. Mot. Trans., Aug. 14, 2002, pp. 8-9, attached as Exhibit A.)

Since that time, Plaintiffs' counsel has reversed position and has twice moved to transfer these Connecticut actions to the District of Minnesota. First, in November 2004, Plaintiffs' counsel asked the Panel to create an MDL and transfer these actions to the District of Minnesota where they could be joined with Plaintiffs' counsel's *Johnson* case and other actions then pending in Minnesota (all but four of which have since been dismissed). The Panel denied this second attempt to create an MDL finding that Plaintiffs "offered no persuasive reason" why the Panel should revisit its prior ruling. *In re Zimmer, Inc., Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)*, 366 F. Supp. 2d 1384 (J.P.M.L. 2005).

Now, utilizing a different statutory mechanism to effect the transfer – 28 U.S.C. § 1404(a) – but seeking the same relief, Plaintiffs again seek to have these cases boxed up

2

and shipped to Minnesota. In direct contradiction of their claim to the Panel in 2002, Plaintiffs' counsel now asserts that "[t]ransfer of these actions to the United States District Court for the District of Minnesota will best serve the interests of justice by conserving judicial resources, decreasing trial costs and reducing the risk of inconsistent adjudications." (Pls.' Mem. Supp. Mot. Trans., May 24, 2005, pp. 12-13.) While Plaintiffs' counsel's latest argument conjures images of an idyllic judicial panacea, it ignores the fact that Plaintiffs have not and cannot show that any of the factors which they are obligated to clearly establish to justify transfer of these cases have been satisfied. In fact, while many factors favor Connecticut as the appropriate forum – it is the location of the Plaintiffs, their fact witnesses, and their medical records, as well as this Court's knowledge of Connecticut substantive law – none of the factors point to Minnesota. Simply saying we want to and are willing to transfer these cases to another forum does not make it appropriate.

Moreover, Plaintiffs' counsel's desire to consolidate its clients' cases in first one and then a different forum suggests two illegitimate motives – (1) Plaintiffs' counsel's desire to save its time and its money on the trial of the cases to the exclusion of all other factors[1] and (2) Plaintiffs' counsel's desire to shop for the best forum, regardless of the Plaintiffs' original choice of forum. Neither of these is an appropriate reason for the transfer sought by Plaintiffs and, as a result, their motion should be denied.

---

[1] Plaintiffs' counsel has filed a motion seeking consolidation for trial of these cases in this Court in the event that the motion for transfer is denied.

3

## II.
## STATEMENT OF FACTS

**A.     The *Dunn* Litigation.**

One or more cases has been pending in the District of Connecticut involving the Centralign since July 2000, when plaintiffs Dolores and Donald Dunn filed a putative class action complaint against Zimmer.  James Johannsen filed his complaint against Zimmer in December 2000, in the Superior Court of Connecticut, Judicial District of New London at Norwich.  Zimmer removed the case to the District of Connecticut.  Plaintiffs Joann Lopes, Sonia Fuentes-Weed, and John and Cynthia Vino all filed complaints against Zimmer in March 2001.  Each of the Plaintiffs claimed that the Centralign was a defective product that caused the loosening and need for revision surgery experienced by each.  Each of the cases, which we have defined for these purposes as the *Dunn* litigation, is pending in this Court.  Discovery is complete and dispositive and expert-related motions have been decided by the Court so that all that remains is to address evidentiary issues and try the lawsuits, with the noted exception of the *Lopes* case where Zimmer has renewed its motion for summary judgment based on statute of limitations grounds.

Plaintiffs' recent attempt to transfer the Dunn litigation to the District of Minnesota was denied on April 20, 2005.  (*See* Exhibit B.)

**B.     The *Johnson* Litigation.**

In May 2002, the *Johnson* plaintiffs (husband and wife), represented by the same lawyers who represent the *Dunn* litigation plaintiffs, filed their complaint against Zimmer in Minnesota state court.  Zimmer later removed the case to the District of Minnesota.

The plaintiffs claimed that the Centralign was a defective product that caused the loosening and need for revision surgery experienced by Mr. Johnson.

On August 16, 2002, the *Johnson* plaintiffs filed a motion to transfer the case and asked that the Panel transfer the case to the District of Connecticut. As discussed above, the Panel denied the motion to transfer. (*See* Exhibit C.) In the aftermath of the Panel's decision, the parties deposed plaintiffs and plaintiffs' treating physicians, exchanged expert reports, deposed experts, completed discovery, and adjudicated dispositive and expert-related motions. Other than evidentiary motions, only the trial remains and, as of this date, no trial date has been set.

### C. Robins Kaplan Litigation.

There currently are four (other than *Johnson*) Centralign cases pending in Minnesota. The plaintiffs in these cases are represented by Robins, Kaplan, Miller & Ciresi, L.L.P.[2] The first filed of these cases, *Lillebo* and *Reiling*, initially were filed in Minnesota state court by another firm in April 2003. Zimmer later removed these cases to federal court and thereafter the Robins Kaplan firm assumed representation of these plaintiffs. The Minnesota court has decided dispositive and expert-related motions and has consolidated the two cases for trial. Other than evidentiary motions, only the trial remains. John Doschadis filed his complaint in December 2003. Discovery in that case is also complete. Finally, Kathryn Leclerc filed her complaint in April 2004. The Robins Kaplan plaintiffs have chosen different experts and advance different theories of defect than those asserted by the *Dunn* litigation and *Johnson* plaintiffs.

---

[2] The four cases are: *John Doschadis v. Zimmer, Inc.,* No. 03-CV-6439, *Kathryn Leclerc v. Zimmer, Inc.,* No. 04-CV-1660, *Allen Lillebo, et al. v. Zimmer, Inc.,* No. 03-CV-2919, and *Evelyn Reiling, et al. v. Zimmer, Inc.,* No. 03-CV-2920.

**D.      Other Minnesota Litigation Mentioned By Plaintiffs.**

The *Johnson* and Robins Kaplan cases are the only Centralign cases pending in Minnesota. All of the other cases mentioned by Plaintiffs in their papers have been dismissed. Thus, the only case pending in Minnesota having any ties to the *Dunn* litigation is Plaintiffs' counsel's *Johnson* case. In other words, the situation now is virtually identical to that which existed when Plaintiffs' counsel tried unsuccessfully to transfer the *Johnson* case to this Court by petitioning the Panel to create an MDL in 2002.

## III.
## ARGUMENT

**A.      This Motion Was Not Brought for the Convenience of Parties or Witnesses or in the Interests of Justice.**

Having lost two previous motions to transfer and consolidate these actions with the *Johnson* case, the instant motion represents Plaintiffs' counsel's last-ditch effort to create an MDL and to do so by improper means. Although allegedly proceeding pursuant to 28 U.S.C. § 1404(a), Plaintiffs' counsel has not brought this motion for the convenience of parties and witnesses or in the interests of justice. This fact is borne out by Plaintiffs' counsel's prior attempt to transfer the *Johnson* case to this Court based on their assertion to the Judicial Panel on Multidistrict Litigation that "Connecticut would be a logical choice … [and] transfer and consolidation in Connecticut will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." (*See* Exhibit A, pp. 8-9.) This fact is further supported by the presence of many factors favoring Connecticut as the appropriate forum – it is the location of the Plaintiffs, their fact witnesses, and their medical records, as well as this Court's knowledge of Connecticut substantive law – and the complete absence of factors which

6

point to Minnesota. This transfer is sought purely for the convenience of Plaintiffs' counsel and that is not a factor to be considered under Section 1404(a). *See Leif Hoegh & Co. v. Alpha Motor Ways, Inc.*, 534 F. Supp. 624, 626 n.4 (S.D.N.Y. 1982) (inconvenience of counsel is not a basis for granting a Section 1404(a) motion to transfer).

**B.    An Analysis of the Factors Used to Determine Whether Transfer is Appropriate Shows That None of the Factors Favor Transfer.**

Section 1404(a) authorizes the transfer of a civil action to another district where it might have been brought if the transfer is for the convenience of parties and witnesses, and in the interests of justice. 28 U.S.C. § 1404(a). The inquiry on a motion to transfer is two-fold. First, the court must determine whether the action sought to be transferred is one that might have been brought in the transferee court.[3] Second, the court must consider the convenience of parties, the convenience of witnesses, and the interests of justice to determine whether a transfer is appropriate. *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 239 (D. Conn. 2001).

As to the second inquiry, courts are guided by the following factors: (1) the weight afforded the plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) locus of operative facts and relative ease to sources of proof; (5) availability of process to compel attendance of witnesses to testify at trial; (6) relative means of the parties; (7) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (8) calendar congestion; (9) practical difficulties; and (10) how best to serve the interests of justice, based on an assessment of

---

[3] Plaintiffs fail to mention or conduct any analysis into whether these actions could have originally been brought in the District of Minnesota. Although it is Plaintiffs' burden to show that transfer is appropriate, for purposes of this motion Zimmer does not dispute that these cases could have been filed originally in the District of Minnesota.

7

the totality of the material circumstances. *Id*. at 239-40. "The burden is on the moving party to clearly establish that a transfer is appropriate, by providing an affidavit containing detailed factual statements explaining why the transferee forum is more convenient, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." [4] *Id.* at 239 (citation omitted).

When faced with circumstances similar to those presented here, courts in the Second Circuit have readily found that transfer pursuant to Section 1404(a) is not warranted. *See, e.g., In re Warrick*, 70 F.3d 736, 740-41 (2d Cir. 1995) (issuing writ of mandamus to prohibit transfer to another state because plaintiff chose to litigate in Connecticut and parties could easily access witnesses' testimony and documents in Connecticut); *Indymac*, 167 F. Supp. 2d at 239-40 (denying motion to transfer where plaintiffs chose to file action in Connecticut, majority of witnesses were located in district, defendant lived short distance from Connecticut border, and defendant's business and relevant records were in Connecticut); *Adams v. Time Warner*, 83 F. Supp. 2d 296, 298-99 (D. Conn. 1999) (case would remain in Connecticut because plaintiff and nine of twelve witnesses resided in state, plaintiff's resources were limited, and Connecticut law governed action).

*BRM Indus., Inc. v. Mazak Corp*. is instructive. There, BRM filed suit after defendants allegedly failed to repair machine tool equipment leased from defendants in a

---

[4] No affidavits were filed with Plaintiffs' motion. Failure to comply with this requirement is an adequate ground, in itself, for denial of Plaintiffs' motion. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir. 1978) (lower court did not abuse its discretion in denying § 1404(a) transfer because movant failed to demonstrate transfer was for convenience of witnesses and present any supporting affidavits), *cert. denied*, 440 U.S. 908 (1979), *and abrogated on other grounds by Pirone v. MacMillan*, 894 F.2d 579 (2d Cir. 1990); *Golden First Mortgage Corp. v. Berger*, 251 F. Supp. 2d 1132, 1142 (E.D.N.Y. 2003) (motion to transfer venue was denied based upon the totality of the circumstances and especially given the absence of any affidavits by movant relating to the ten factors); *Keck v. Employees Indep. Ass'n*, 387 F. Supp. 241, 243 n.6 (E.D. Pa. 1974) (transfer motion denied where movants failed to file affidavits, depositions, stipulations or other documents containing facts which establish the need to transfer).

8

timely manner. *Id.*, 42 F. Supp. 2d 176, 178 (D. Conn. 1999). BRM's complaint included claims for breach of warranty, misrepresentation, negligence, and a violation of the Connecticut Unfair Trade Practices Act. *Id.* Defendant Mazak sought to transfer the action to Kentucky pursuant to Section 1404(a). *Id.* at 179. Despite a forum selection clause in the parties' contract mandating that disputes would be brought in Kentucky, the court refused to transfer venue. After considering the relevant factors, the court found that Connecticut was a more convenient forum: all witnesses resided in Connecticut and could easily be compelled to testify at trial; the subject of the dispute took place in Connecticut; the evidentiary documents and equipment in dispute were located in Connecticut; litigation in Kentucky would be a financial hardship to BRM, the plaintiff; and the court had the capacity to hear the case once it was ready for trial. *Id.* at 180-81. The forum selection clause in the parties' contract, thus, was far outweighed by "a Kentucky forum's inconvenience to the non-party witnesses." *Id.* at 181.

The same factors that weighed against transfer in *BRM* compel the same result here. As demonstrated below, none of the factors weigh in favor of transferring these cases to Minnesota. Plaintiffs' motion should therefore be denied.

### 1. No weight should be afforded to Plaintiffs' second choice of forum.

Plaintiffs chose to litigate their claims in Connecticut. Now, however, Plaintiffs want to choose a different forum and argue that their second choice, in conjunction with their willingness to have their cases transferred, is entitled to deference. Plaintiffs are wrong. While a plaintiff's choice of forum is "highly esteemed" on a motion to transfer, this deference is dissipated where the plaintiff originally filed suit in another district. *Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*, No. 301CV2282-L, 2003 WL 298799,

9

at *4 (N.D. Tex. Feb. 10, 2003); *FPC Corp. v. Uniplast, Inc.*, 994 F. Supp. 945, 946 (N.D. Ill. 1998). Indeed, courts do not ordinarily grant a plaintiff's motion to transfer venue because it was the plaintiff who chose the forum in the first place. *Ferrostaal, Inc. v. Union Pac. R.R. Co.*, 109 F. Supp. 2d 146, 151 (S.D.N.Y. 2000); *see also Moto Photo*, 2003 WL 298799, at *4 (*citing* 15 Charles A. Wright et al., *Federal Practice and Procedure* § 3848 (2d ed. 1986) ("It is one thing to give great weight to plaintiff's initial choice of forum, but it seems odd that a plaintiff who has chosen an improper forum should have great weight given to [its] second choice.")). Plaintiffs, having willingly chosen Connecticut, are not entitled to have any weight given to their second choice.

### 2. The most convenient forum for the parties is Connecticut because all of the Plaintiffs reside in Connecticut.

Plaintiffs' argument that transfer will benefit the convenience of the parties defies reason and ignores the facts. Apparently recognizing this, they begin by stating that Zimmer cannot assert any compelling reason as to why transfer of these cases would cause inconvenience to Zimmer, as if Zimmer carries the burden to demonstrate that it would suffer inconvenience. The burden, however, lies with the Plaintiffs to clearly establish that transfer is appropriate by affirmatively demonstrating how transfer will benefit the convenience of the parties.[5] *Indymac*, 167 F. Supp. 2d at 239. Plaintiffs have not and cannot do so.

Plaintiffs chose to file their actions in Connecticut – presumably because it is the most convenient forum for them. It is expedient and disingenuous now to argue that it is

---

[5] Further, the fact that Zimmer is currently defending *other* suits in Minnesota in no way establishes that transfer of *these* actions is appropriate. The fact is that other than Plaintiff's counsel's *Johnson* action, only four other Centralign cases are pending in Minnesota. Those four cases involve different plaintiffs' counsel, different experts, and different theories of defect. Thus, even if the presence of other similar lawsuits might be considered by the Court, those four actions do not lend any support to Plaintiffs' motion.

10

more convenient for Plaintiffs to transfer these actions halfway across the country to a district that Plaintiffs readily admit has absolutely no connection to this suit. This Court cannot ignore the fact that all of the Plaintiffs live in Connecticut regardless of the representation that they are all willing to travel to Minnesota for trial. Further, Plaintiffs fail to identify a single witness who would be either inconvenienced by retaining venue in this Court or convenienced by a transfer. Tellingly, none of the Plaintiffs has any known connection to Minnesota except that his or her attorneys have another case pending in that state. Yet, the mere inconvenience of counsel is not a basis for granting a Section 1404(a) motion to transfer. *Leif Hoegh & Co.*, 534 F. Supp. at 626 n.4.

### 3. All of Plaintiffs' treating physicians reside in Connecticut and their experts are located in neighboring states.

Plaintiffs admit that all of their treating physicians reside in Connecticut. Their "offer" to present the testimony of their treating physicians via videotape does not render Minnesota a more or even equally convenient forum and to affirmatively state otherwise is disingenuous. The fact of the matter is that Plaintiffs are seeking to move these cases halfway across the country whereas if the cases stay put then their treating physicians can testify at the trial without traveling a great distance. While the Plaintiffs may opt to forego live testimony of their treating physicians, Zimmer does not so opt. Moreover, none of the treating physicians' depositions were videotaped. Because discovery is closed and there is no such thing as an evidentiary deposition under the Federal Rules of Civil Procedure, Fed. R. Civ. P. 32(a), these physicians will not be appearing "via videotape" absent order of some court.

As for their expert witnesses, Plaintiffs stress that none of the experts disclosed in theses cases reside in either Connecticut or Minnesota and affirmatively offer that their

11

experts are already required to appear for trial in Minnesota for the *Johnson* case (the other cases in which they were disclosed as experts in Minnesota have been dismissed). However, Plaintiffs' counsel previously argued in favor of Connecticut as the appropriate forum because the "Connecticut plaintiffs have retained expert witnesses located in Cambridge, Massachusetts (Dr. Rose) and West Charlton, New York (Dr. Zeliger), both neighboring states convenient to Connecticut." (*See* Exhibit A, pp. 8-9.) Presumably Massachusetts and New York remain "neighboring states convenient to Connecticut" which, in turn, makes Connecticut a more convenient forum for Plaintiffs' experts.

### 4. The location of documentary evidence and operative facts is not in Minnesota.

Transfer should be denied for the additional reason that none of the documentary evidence likely to be used at trial is located in Minnesota; rather, Plaintiffs' medical records and files are stored in Connecticut. Furthermore, the operative facts surrounding the injuries complained of by Plaintiffs also occurred in Connecticut. From the beginning of this action, Zimmer has contended that the most significant factor in the longevity of cemented stems is the surgical technique used in implanting the stem. It is most convenient therefore for this action to remain in Connecticut where Plaintiffs' hip replacement surgeries were performed and the surgical facilities are located. While it is true that the Centralign was not designed or manufactured in Connecticut, it was not designed or manufactured in Minnesota either. Again, Plaintiffs fail to clearly establish that Minnesota is a more convenient forum and, rather than being a neutral factor, the location of the Plaintiffs' medical records and surgical facilities in Connecticut cuts in favor of the cases remaining with this Court.

### 5. Witnesses can be compelled to testify at trial easier in Connecticut, given that Plaintiffs and their witnesses are all in Connecticut.

No forum is more convenient for compelling witnesses to testify at trial than Connecticut. That fact that the Plaintiffs' treating physicians reside in Connecticut subjects them to the subpoena power of this Court. Thus, if necessary, Zimmer can avail itself of compulsory process and ensure that any unwilling witnesses will appear at trial. On the other hand, if these cases are transferred, Zimmer will not have the ability to compel the attendance of these witnesses in Minnesota.[6] Again, this factor weighs in favor of denying the motion to transfer.

### 6. The relative means of both parties dictate that these cases should remain in this Court.

The relative means of the parties militates against transfer to Minnesota. If transfer is granted, multiple trips to Minnesota likely will be required. Regardless of whether the attendance of Plaintiffs' counsel is only required or if the Plaintiffs will need to appear in court, additional travel expenses will be incurred by Plaintiffs. By their own admission, Plaintiffs have "considerably fewer resources" than Zimmer, which will surely be exhausted by numerous and unnecessary trips to a remote forum when the parties can simply and conveniently continue to litigate these cases in Connecticut. Once more, this factor weighs in favor of denying the motion to transfer.

---

[6] Specifically, if these cases are transferred to Minnesota, Zimmer has no way to compel Plaintiffs' treating physicians to testify at trial. Any subpoenas that Zimmer issued to such nonparty witnesses located in Connecticut would be useless. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) (permitting quash of subpoena issued to nonparty that requires witness to travel more than 100 miles from residence).

### 7. Given that Connecticut law governs this action, this Court is best to apply the applicable substantive law.

Plaintiffs argue that Minnesota is a more convenient forum because Judge Tunheim and Magistrate Judge Noel, assigned to the Zimmer Centralign cases in Minnesota, are familiar with the subject matter of this litigation. But Plaintiffs fail to give any weight to or even discuss a more relevant factor – this Court's knowledge of the controlling substantive law. Connecticut law governs the *Dunn* litigation, whereas Minnesota law applies to *Johnson* and, arguably, the other Centralign cases pending in Minnesota.[7] This Court – not the District Court in Minnesota court – is in the best position to interpret Plaintiffs' Connecticut Product Liability Act claims and apply Connecticut law to these cases.

Furthermore, as to familiarity with the subject matter of the litigation, it is unclear why Plaintiffs believe the Minnesota court is more knowledgeable than this Court with regard to these cases. Both courts have decided dispositive and expert-related motions and both courts have yet to conduct a jury trial on these issues. Zimmer does not hazard a guess as to which court is more familiar with the subject matter positing only that Plaintiffs' claim regarding the superior knowledge of the Minnesota court is baseless.

Finally, maintaining this action in Connecticut poses no risk of conflicting rulings because the substantive law differs between the *Dunn* litigation and the lawsuits pending in Minnesota and, as this Court previously held when deciding Plaintiffs' class certification motion, individualized questions of fact predominate in these cases. There is simply no reason to transfer these cases to Minnesota.

---

[7] It is possible that North Dakota substantive law may apply to one of the Robins Kaplan cases.

14

**8.    This Court's calendar is not too congested to retain these cases.**

Plainly absent from Plaintiffs' motion is any assertion that this Court's docket is too congested to retain these cases. Similarly, no allegations have been made that the District of Minnesota's docket and in particular Judge Tunheim's and Magistrate Judge Noel's calendars are more or less congested than this Court's docket. Plaintiffs' transfer request also ignores the salient fact that discovery in these cases is closed and the Court has already ruled on dispositive and expert-related motions. Other than the renewed summary judgment motion in *Lopes*, all that remains is to rule on evidentiary issues and try these cases.

**9.    The practical difficulties presented by a transfer weigh against changing venue to Minnesota.**

Transfer to Minnesota does not make any practical sense. Plaintiffs chose to file these cases in Connecticut where they reside, where their fact witnesses are located, in a state adjacent to the homes of their experts, where their medical records are situated, and where their alleged injuries took place. Based solely on the fact that five other Centralign cases are pending in Minnesota, including one involving Plaintiffs' counsel, Plaintiffs' counsel asks the Court to uproot this litigation from Connecticut and transfer it to Minnesota. Minnesota, however, has absolutely no connection to this suit. Nor does Minnesota substantive law apply to any of the cases Plaintiffs seek to transfer to Minnesota. The practical difficulties presented by Plaintiffs' requested transfer are obvious.

On the flip side, the overwhelming facts establish that Connecticut is the most convenient forum for the parties and witnesses. If, however, Connecticut is somehow deemed inconvenient (and it is not), Plaintiffs have not shown that Minnesota fares any

15

better. Where transfer merely shifts rather than eliminates inconvenience, plaintiff's original choice of forum should not be disturbed. *Toti v. Plymouth Bus Co.*, 281 F. Supp. 897, 898 (S.D.N.Y. 1968); *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1319 (M.D. Fla. 2000); *Blumenthal v. Mgmt. Assistance, Inc.*, 480 F. Supp. 470, 474 (N.D. Ill. 1979). Plaintiffs' transfer request rests on the irrelevant fact that opposing counsel has another Centralign case pending in Minnesota. The convenience of counsel does not warrant transfer.

### 10. The interests of justice are best served by maintaining this action in Connecticut.

Plaintiffs concede that neither they nor their witnesses reside in Minnesota; none of the evidence likely to be used in this case is located in Minnesota; no material events occurred in Minnesota; and Plaintiffs will incur additional expenses to travel from Connecticut to Minnesota. It is evident that Minnesota has no interest in these cases. Quite simply, no one other than Plaintiffs' attorney might be convenienced by having the cases transferred to Minnesota. As stated previously, such hypothetical convenience to Plaintiffs' counsel is not a factor to be considered when deciding a motion to transfer.

In addition, the *Dunn* litigation, the *Johnson* case, and the other Minnesota cases have been pending for several years and are now at advanced stages of litigation. Any perceived benefit of transferring the *Dunn* litigation to Minnesota for coordinated discovery or other pretrial proceedings is lost. To transfer the *Dunn* cases just when they are ready for trial does not conserve judicial resources or decrease trial costs.

Given that the aforementioned factors all weigh heavily against transfer and given that transfer is convenient for none of the parties or witnesses, the arguments offered by Plaintiffs' counsel in support of transfer can only be a pretext for the true motive:

perhaps Plaintiffs' counsel believes that the Minnesota District Court will be more receptive to their claims for purposes of trial. Perhaps Plaintiffs' counsel is frustrated that this Court has disposed of part of Plaintiffs' claims on summary judgment. Perhaps Plaintiffs' counsel seeks to create the MDL that was denied twice before so all of the cases in their portfolio can be tried at once and thereby conserve counsel's time and money. Section 1404(a), however, is not designed to provide a mechanism for forum-shopping or to provide an end-run around the denial of a Section 1407 transfer motion.

## IV.
## CONCLUSION

For the reasons set forth above, the Court should deny the motion to transfer.

Dated: June 13, 2005Respectfully submitted,

**DEFENDANT, ZIMMER, INC.**

By: One of Its Attorneys

Michael S. Elvin (ct 21711)
Albert J. Dahm (ct 21710)
Dahm & Elvin, LLP
9604 Coldwater Road, Suite 201
Fort Wayne, IN  46825
Telephone:  (260) 497-6000
Facsimile:  (260) 497-6019

Francis H. Morrison, III, (ct04200)
Day Berry & Howard, LLP
CityPlace I
Hartford, CT  06103
Telephone:  (860) 275-0100
Facsimile:  (860) 275-0343

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that on the 13th day of June, 2005, a copy of the foregoing was served on the following counsel of record by first-class mail, postage prepaid:

Robert I. Reardon, Jr.
The Reardon Law Firm
160 Hempstead Street
New London, CT  06320

                _____
                Francis H. Morrison III